## DOYLE v. CONTINENTAL INSURANCE COMPANY.

1. The court reaffirms the decision in *Insurance Company* v. *Morse*, 20 Wall. 445, that an agreement to abstain in all cases from resorting to the courts of the United States is void as against public policy, and that a statute of Wisconsin, requiring such an agreement, is in conflict with the Constitution of the United States.

2. A State has the right to impose conditions, not in conflict with the Constitution or the laws of the United States, to the transaction of business within its territory by an insurance company chartered by another State, or to exclude such company from its territory, or, having given a license, to revoke it, with or without cause.

3. The legislature of Wisconsin enacted that if any foreign insurance company transferred a suit brought against it from the State courts to the Federal courts, the secretary of State should revoke and cancel its license to do business within the State. An injunction to restrain him from so doing, because such a transfer is made, cannot be sustained. The suggestion that the intent of the legislature is to accomplish an illegal result, to wit, the prevention of a resort to the Federal courts, is not accurate. The effect of this decision is that the company must forego such resort, or cease its business in the State. The latter result is here accomplished.

4. As the State has the right to exclude such company, the means by which she causes such exclusion, or the motives of her action, are not the subject of judicial inquiry.

APPEAL from the Circuit Court of the United States for the Western District of Wisconsin.

The bill of complaint alleges that the complainant, the Continental Insurance Company of the city of New York, is a corporation organized and existing under the laws of the State of Connecticut, and a citizen of that State.

That prior to the passage of the act of the legislature of the State of Wisconsin, entitled "An Act to provide for the incorporation and government of fire and inland navigation insurance companies," approved March 4, 1870, the complainant had established agencies, opened offices, and made considerable expenditures of money in advertising the business of insurance against loss by fire in the State of Wisconsin. That soon after the passage of said act complainant complied with the provisions of sect. 22 thereof, and procured from the State treasurer and secretary of State the certificates and license to do business in said State as therein provided, and did subsequently fully comply with said act; but that, upon filing appointment of an agent

upon whom process of law could be served, complainant was compelled to add an agreement, on its part, not to remove into the Federal courts suits brought against it in the State courts, which agreement to that effect was made. That after the decision of this court in *Insurance Company* v. *Paige*, 20 Wall. 445, the complainant removed a suit brought on one of its policies against it in the State court, into the Federal court. That because of such removal a demand was made upon the defendant, Peter Doyle, as secretary of State, to revoke the certificate or license authorizing the complainant to do business in said State of Wisconsin.

That complainant had a large number of agencies in the State engaged in the conduct of its business, and a revocation of its license would work great and irreparable injury to the complainant in its business in said State, and the complainant feared that said defendant would revoke said license, unless restrained by injunction. A temporary injunction was issued restraining the defendant from revoking the license of the complainant, because of the removal of said suit from the State to the Federal court.

A demurrer to the bill was overruled, and a decree entered making the injunction perpetual. From this decree the defendant appealed.

Sect. 22, c. 56, Laws of Wisconsin, 1870, provides as follows : —

"That any fire insurance company, association, or partnership, incorporated by or organized under the laws of any other State of the United States, desiring to transact any such business as aforesaid, by any agent or agents, in this State, shall first appoint an attorney in this State, on whom process of law can be served, containing an agreement that such company will not remove the suit for trial in the United States Circuit or Federal Courts, and file in the office of the Secretary of State a written instrument, duly signed and sealed, certifying such appointment, which shall continue until another attorney be substituted."

Sects. 1 and 3, c. 64, are in the following words : —

" SECTION 1. If any insurance company or association shall make application to change the *venue*, or remove any suit or action heretofore commenced, or which shall be hereafter commenced, in any

court of the State of Wisconsin, to the United States Circuit or District Court, or to the Federal court, contrary to the provisions of any law of the State of Wisconsin, or contrary to any agreement it has made and filed, or may make and file, as provided and required by section number twenty-two of chapter fifty-six of the General Laws of Wisconsin for the year A.D. 1870, or any provision of law now in force in said State, or may hereafter be enacted therein, it shall be the imperative duty of the secretary of State, or other proper State officer, to revoke and recall any authority or license to such company to do and transact any business in the State of Wisconsin, and no renewal or new license or certificate shall be granted to such company for three years after such revocation, and such company shall thereafter be prohibited from transacting any business in the State of Wisconsin until again duly licensed."

" SECT. 3. If any insurance company or association shall make application to remove any case from the State court into the United States Circuit or District Court or Federal court, contrary to the provisions of chapter fifty-six of the General Laws of Wisconsin for the year A.D. 1870, or any other State law, or contrary to any agreement which such company may have filed in pursuance of said chapter fifty-six of the General Laws of Wisconsin for the year A.D. 1870, or any other law of the State of Wisconsin, it shall be liable, in addition, to a penalty of not less than $100 or more than $500 for each application so made, or for each offence so committed for making such application, the same to be recovered by suit in the name of the State of Wisconsin ; and it shall be the imperative duty of the attorney-general of the State of Wisconsin to see and attend that all of the provisions of said chapter fifty-six of the General Laws of 1870, and the provisions of this act, are duly enforced."

*Mr. George B. Smith* for the appellant.

*Mr. William Allen Butler, Mr. B. J. Stevens,* and *Mr. I. C. Sloan,* for the appellee.

MR. JUSTICE HUNT delivered the opinion of the court.

The case of *Insurance Company* v. *Morse,* 20 Wall. 445, is the basis of the bill of complaint in the present suit. We have carefully reviewed our decision in that case, and are satisfied with it. In that case, an agreement not to remove any suit brought against it in the State courts of Wisconsin into the Federal courts had been made by the company, in compliance with the Wisconsin statute of 1870. The company, neverthe-

less, did take all the steps required by the United States statute of 1789 to remove its suit with Morse from the State court into the Federal courts. Disregarding that action, the Supreme Court of Wisconsin allowed the action in the State court to proceed to judgment against the company, as if no transfer had been made. When the judgment thus obtained was brought into this court, we held it to be illegally obtained, and reversed it. It was held, first, upon the general principles of law, that although an individual may lawfully omit to exercise his right to transfer a particular case from the State courts to the Federal courts, and may do this as often as he thinks fit in each recurring case, he cannot bind himself in advance by an agreement which may be specifically enforced thus to forfeit his rights. This was upon the principle that every man is entitled to resort to all the courts of the country, to invoke the protection which all the laws and all the courts may afford him, and that he cannot barter away his life, his freedom, or his constitutional rights.

As to the effect of the statutory requirement of the agreement, the opinion, at page 458 of the case as reported, is in these words: —

"On this branch of the case the conclusion is this: —

"1st, The Constitution of the United States secures to citizens of another State than that in which suit is brought an absolute right to remove their cases into the Federal court, upon compliance with the terms of the act of 1789.

"2d, The statute of Wisconsin is an obstruction to this right, is repugnant to the Constitution of the United States and the laws in pursuance thereof, and is illegal and void.

"3d, The agreement of the insurance company derives no support from an unconstitutional statute, and is void, as it would be had no such statute been passed."

The opinion of a court must always be read in connection with the facts upon which it is based. Thus, the second conclusion above recited, that the statute of Wisconsin is repugnant to the Constitution of the United States and is illegal and void, must be understood as spoken of the provision of the statute under review; to wit, that portion thereof requiring a stipulation not to transfer causes to the courts of the United

States. The decision was upon that portion of the statute only, and other portions thereof, when they are presented, must be judged of upon their merits.

We have not decided that the State of Wisconsin had not the power to impose terms and conditions as preliminary to the right of an insurance company to appoint agents, keep offices, and issue policies in that State. On the contrary, the case of *Paul* v. *Virginia*, 8 Wall. 168, where it is held that such conditions may be imposed, was cited with approval in *Insurance Company* v. *Morse.* That case arose upon a statute of Virginia, providing that no foreign insurance company should transact business within that State until it had taken out a license, and had made a deposit with the State treasurer of bonds varying in amount from $30,000 to $50,000, according to the amount of its capital. This court sustained the power of the legislature to impose such conditions, and sustained the judgment of the State court, convicting Paul upon an indictment for violating the State law, in issuing policies without having first complied with the conditions required.

*Ducat* v. *Chicago*, 10 Wall. 410, decided that the statute of the State of Illinois, requiring a license to be taken out by foreign insurance companies, for which six dollars each should be paid, and the filing of an appointment of an attorney, with power to accept service of process, was a legal condition ; and a requirement, that, when such company was located in the city of Chicago, it should also pay to the treasurer of that city two dollars upon the one hundred dollars upon the amount of all premiums received, was held to be legal.

In *Lafayette Insurance Co.* v. *French*, 18 How. 404, the court say : —

"A corporation created by Indiana can transact business in Ohio only with the consent, express or implied, of the latter State. 13 Pet. 519. This consent may be accompanied by such conditions as Ohio may think fit to impose; and these conditions must be deemed valid and effectual by other States and by this court, provided they are not repugnant to the Constitution or laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each State from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defence."

Neither did *Insurance Company* v. *Morse, supra,* undertake to decide what are the powers of the State of Wisconsin, in revoking a license previously granted to an insurance company, for what causes or upon what grounds its action in that respect may be based. No such question arose upon the facts, or was argued by counsel or referred to in the opinion of the court.

The case now before us does present that point, and with distinctness.

The complainant alleges that a license had been granted to the Continental Insurance Company, upon its executing an agreement that it would not remove any suit against it from the tribunal of the State to the Federal courts; that in the case of Drake it did, on the tenth day of March, 1875, transfer his suit from the Winnebago circuit of the State to the Circuit Court of the United States; that Drake thereupon demanded that the defendant, who is secretary of State of Wisconsin, should revoke and annul its license, in accordance with the provisions of the act of 1872; that it is insisted that he has power to do so summarily, without notice or trial; that the complainant is fearful that he will do so, and that it will be done simply and only for the reason that the complainant transferred to the Federal court the case of Drake, as above set forth.

The cases of *Bank of Augusta* v. *Earle, Ducat* v. *Chicago, Paul* v. *Virginia,* and *Lafayette Insurance Co.* v. *French,* establish the principle that a State may impose upon a foreign corporation, as a condition of coming into or doing business within its territory, any terms, conditions, and restrictions it may think proper, that are not repugnant to the Constitution or laws of the United States. The point is elaborated at great length by Chief Justice Taney in the case first named, and by Mr. Justice Field in the case last named.

The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a State is always revocable. *Rector* v. *Philadelphia,* 24 How. 300; *People* v. *Roper,* 55 N. Y. 629; *People* v. *Commissioners,* 47 N. Y. 50. The power to revoke can only be restrained, if at all, by an explicit contract upon good consideration to that effect. *Humphrey* v. *Pegues,* 16 Wall. 244; *Tomlinson* v. *Jessup,* 15 id. 454.

A license to a foreign corporation to enter a State does not involve a permanent right to remain.   Subject to the laws and Constitution of the United States, full power and control over its territories, its citizens, and its business, belong to the State.

If the State has the power to do an act, its intention or the reason by which it is influenced in doing it cannot be inquired into.   Thus, the pleading before us alleges that the permission of the Continental Insurance Company, to transact its business in Wisconsin, is about to be revoked, for the reason that it removed the case of Drake from the State to the Federal courts.

If the act of an individual is within the terms of the law, whatever may be the reason which governs him, or whatever may be the result, it cannot be impeached.   The acts of a State are subject to still less inquiry, either as to the act itself or as to the reason for it.   The State of Wisconsin, except so far as its connection with the Constitution and laws of the United States alters its position, is a sovereign State, possessing all the powers of the most absolute government in the world.

The argument that the revocation in question is made for an unconstitutional reason cannot be sustained.   The suggestion confounds an act with an emotion or a mental proceeding, which is not the subject of inquiry in determining the validity of a statute.   An unconstitutional reason or intention is an impracticable suggestion, which cannot be applied to the affairs of life.   If the act done by the State is legal, is not in violation of the Constitution or laws of the United States, it is quite out of the power of any court to inquire what was the intention of those who enacted the law.

In all the cases where the legislation of a State has been declared void, such legislation has been based upon an act or a fact which was itself illegal.   Thus, in *Crandall* v. *Nevada*, 6 Wall. 35, a tax was imposed and collected upon passengers in railroad and stage companies.

In *Almy* v. *State of California*, 24 How. 169, a stamp duty was imposed by the legislature upon bills of lading, for gold or silver transported from that State to any port or place out of the State.

In *Brown* v. *The State of Maryland*, 12 Wheat. 419, a license, at an expense of $50, was required before an importer of goods could sell the same by the bale, package, or barrel.

In *Henderson* v. *Mayor of New York*, 92 U. S. 265, the statute required the master to give a bond of $300 for each passenger, conditioned that he should not become a public charge within four years, or to pay the sum of $1.50.

In the *Passengers' Case*, 7 How. 572, the requirement was of a like character.

In all these cases, it was the act or fact complained of that was the subject of judicial injury, and upon the act was the judgment pronounced.

The statute of Wisconsin declares that if a foreign insurance company shall remove any case from its State court into the Federal courts, contrary to the provisions of the act of 1870, it shall be the duty of the secretary of State immediately to cancel its license to do business within the State. If the State has the power to cancel the license, it has the power to judge of the cases in which the cancellation shall be made. It has the power to determine for what causes and in what manner the revocation shall be made.

It is said that we thus indirectly sanction what we condemn when presented directly; to wit, that we enable the State of Wisconsin to enforce an agreement to abstain from the Federal courts. This is an "inexact statement." The effect of our decision in this respect is that the State may compel the foreign company to abstain from the Federal courts, or to cease to do business in the State. It gives the company the option. This is justifiable, because the complainant has no constitutional right to do business in that State; that State has authority at any time to declare that it shall not transact business there. This is the whole point of the case, and, without reference to the injustice, the prejudice, or the wrong that is alleged to exist, must determine the question. No right of the complainant under the laws or Constitution of the United States, by its exclusion from the State, is infringed; and this is what the State now accomplishes. There is nothing, therefore, that will justify the interference of this court.

> *Decree reversed, and cause remanded with instructions to dismiss the bill.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE SWAYNE and MR. JUSTICE MILLER, dissenting.

I feel obliged to dissent from the judgment of the court in this case.

The following is a brief statement of the reasons for my opinion :—

Though a State may have the power, if it sees fit to subject its citizens to the inconvenience, of prohibiting all foreign corporations from transacting business within its jurisdiction, it has no power to impose unconstitutional conditions upon their doing so. Total prohibition may produce suffering, and may manifest a spirit of unfriendliness towards sister States; but prohibition, except upon conditions derogatory to the jurisdiction and sovereignty of the United States, is mischievous, and productive of hostility and disloyalty to the general government. If a State is unwise enough to legislate the one, it has no constitutional power to legislate the other. The citizens of the United States, whether as individuals or associations, corporate or incorporate, have a constitutional right, in proper cases, to resort to the courts of the United States. Any agreement, stipulation, or State law precluding them from this right is absolutely void, — just as void as would be an agreement not to resort to the State courts for redress of wrongs, or defence of unjust actions; or as would be a city ordinance prohibiting an appeal to the State courts from municipal prosecutions.

The questions arising upon these Wisconsin laws have already been considered by this court in the case of *Insurance Company* v. *Morse*, and we held and adjudged that the agreement which the company was compelled to make, not to remove a suit into the Federal courts, was absolutely void. In principle, this case does not differ a particle from that. The State legislation of 1872, under which, and in obedience to which, the license of the appellees is threatened to be revoked, is just as unconstitutional and just as void as the agreement was in the former case.

The argument used, that the greater always includes the less, and, therefore, if the State may exclude the appellees without any cause, it may exclude them for a bad cause, is not

sound. It is just as unsound as it would be for me to say, that, because I may without cause refuse to receive a man as my tenant, therefore I may make it a condition of his tenancy that he shall take the life of my enemy, or rob my neighbor of his property.

The conditions of society and the modes of doing business in this country are such that a large part of its transactions is conducted through the agency of corporations. This is especially true with regard to the business of banking, insurance, and transportation. Individuals cannot safely engage in enterprises of this sort, requiring large capital. They can only be successfully carried out by corporations, in which individuals may safely join their small contributions without endangering their entire fortunes. To shut these institutions out of neighboring States would not only cripple their energies, but would deprive the people of those States of the benefits of their enterprise. The business of insurance, particularly, can only be carried on with entire safety by scattering the risks over large areas of territory, so as to secure the benefits of the most extended average. The needs of the country require that corporations — at least those of a commercial or financial character — should be able to transact business in different States. If these States can, at will, deprive them of the right to resort to the courts of the United States, then, in large portions of the country, the government and laws of the United States may be nullified and rendered inoperative with regard to a large class of transactions constitutionally belonging to their jurisdiction.

The whole thing, however free from intentional disloyalty, is derogatory to that mutual comity and respect which ought to prevail between the State and general governments, and ought to meet the condemnation of the courts whenever brought within their proper cognizance.

In my judgment, the decree for injunction ought to be affirmed.