HARTFORD FIRE INS. CO. OF CONNECTICUT et al. v.
PERKINS, Insurance Com'r.

(Circuit Court, D. South Dakota.   November 6, 1903.)

1. FOREIGN CORPORATIONS—STATUTES—CONSTITUTIONALITY—RIGHT TO CONTEST.
    Since a foreign corporation is entitled to do business in the state only at the discretion of such state, and under such terms and conditions as it may see fit to enforce, such corporation is not entitled to contest the constitutionality of a state statute imposing terms on which it may be allowed to do business within such state.

2. SAME.
    Whether a statute prohibiting insurance companies from combining to establish rates, etc., and providing for the revocation of the license of a foreign company failing to comply therewith, was unconstitutional as to domestic companies, and therefore was void in toto, could not be determined in a suit by a foreign insurance company having no right to contest the constitutionality of the law.

On Demurrer to Bill.

Preston & Hannett, for complainants.
Philo Hall, Atty. Gen., for defendant.

CARLAND, District Judge.   This is a bill in equity filed in this court by the Hartford Fire Insurance Company, the Phœnix Insurance Company of Brooklyn, the Royal Insurance Company of Liverpool, the German American Fire Insurance Company, and the Springfield Fire & Marine Insurance Company, all foreign insurance companies and corporations, against John C. Perkins, commissioner of insurance for the state of South Dakota, for the purpose of perpetually enjoining said commissioner from enforcing the provisions of an act of the Legislative Assembly of the state of South Dakota, approved March 9, 1903 (Sess. Laws S. D. 1903, p. 183, c. 158), and to have said act declared unconstitutional and void, as being in con-

¶ 1. Status of foreign corporations, see note to Republican Mountain Silver Mines v. Brown, 7 C. C. A. 419.

flict with both state and federal Constitutions. The act referred to is as follows:

"Section 1. Combinations Prohibited—Penalty for Violation. Any combination, agreement, confederation, compact or understanding made and entered into directly or indirectly, by or between two or more fire insurance companies insuring property against loss or damage by fire and loss or damage from the elements, transacting business within this state, or between officers, agents or employés of any such companies, relating to the rates to be charged for insurance, regulating or fixing the minimum price or premium to be paid for insuring property located within this state, the amount of commission to be allowed agents, for procuring insurance or the manner of transacting the business of fire or other casualty insurance within this state, is hereby declared to be unlawful, and any such company, officer or agent violating the provision shall be deemed guilty of a misdemeanor, and on conviction thereof in any court having jurisdiction shall pay a penalty of not less than one hundred dollars nor more than five hundred dollars for each offense, to be recovered for the use of the general fund of the state, and any such company, corporation or association so offending shall not be permitted to transact business within this state.

"Sec. 2. Affidavit must be Made When Called For. Any fire insurance company, corporation or association desiring to transact business within this state shall, in addition to the requirements now provided for by law, furnish the insurance commissioner of this state on or before the first day of July in each year, and at any other time during the year when called upon by the insurance commissioner of this state, as one of the conditions for being permitted to transact business within this state, an affidavit subscribed and sworn to by the president or secretary or managing officer of such corporation or association before competent authority, stating that said company of which he is an officer has not violated any of the provisions of the foregoing act, naming them, and such affidavit shall be in the following form:

"State of ——, County of ——, ss.:

"I, ——, being first duly sworn, depose and say, that I am one of the managing officers of the —— company or association, and that said association has not entered and will not enter into any combination or agreement with any other fire insurance company or companies whatsoever, by which there is any understanding of whatsoever kind or character, either directly or indirectly, tending to fix or establish a uniform price or premium for fire insurance in the state of South Dakota, or any agreement whatever, either directly or indirectly, relating to the rates to be charged for insurance within said state.

"Sec. 3. Any Officer or Employé of Insurance Companies may be Summoned to Appear before Commissioner. The commissioner of insurance of this state is hereby authorized to summon and bring before him for examination under oath any officer or employé of any fire insurance company transacting business within this state suspected of violating any of the provisions of this act; and on complaint in writing made to him by two or more residents of this state charging such company under oath upon their knowledge or information and belief, with violating the provisions of this act, said insurance commissioner shall summon and cause to be brought before him for examination under oath any officer or employé of said company; and if such examination and the examination of any other witnesses that may be produced and examined, the insurance commissioner shall determine that said company is guilty of a violation of any of the provisions of this act, or if any officer shall fail to appear or submit to an examination after being duly summoned, said commissioner shall forthwith issue an order revoking the authority of such company to transact business within this state, and such company shall not thereafter be permitted to transact the business of fire insurance in this state at any time within one year from the time of such revocation.

"Sec. 4. Testimony not to be Used against Person Making the Same. The statements or declarations made or testified to by any such officer or agent in the investigation before the commissioner as provided in this act, shall

not be used against any person making the same in any criminal prosecution against him, and no person shall be excused from testifying for the reason that his testimony so given will tend to criminate him.

"Sec. 5. Repeal. All acts and parts of acts in conflict with the foregoing provisions are hereby repealed.

"Approved March 9, 1903."

The defendant has demurred to the bill for want of equity, and the cause is now before the court after argument upon bill and demurrer. The bill alleges that complainants are, and have been for many years last past, engaged in the business of insuring property against loss by fire in the state of South Dakota, and have always heretofore complied with, and are now complying with, all laws in force in the state of South Dakota regulating or appertaining to foreign insurance corporations except the act hereinbefore referred to, which as to complainants is alleged to be unconstitutional and void. The specific portions of the state and federal Constitutions which it is claimed are violated by said act are as follows: First, it is claimed that the act violates the state Constitution, in that it confers judicial power upon the insurance commissioner; second, that it violates article 14 of the amendments to the Constitution of the United States, in that it deprives complainants of their liberty and property without due process of law, and denies to them the equal protection of the laws; third, that it violates section 10 of article 1 of the Constitution of the United States, in that it impairs the obligation of contracts or the liberty to make contracts.

Counsel for complainants in their brief use the following language:

"Ever since the decision of Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, it has been settled that a corporation created by one state, or by a foreign government, can exercise none of the functions or privileges conferred by its charter in any other state or country, except by the comity and consent of the latter. It follows that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest, and the foreign corporation must assent to the terms imposed by the state. The state has the absolute right, we admit, to exclude such foreign corporation, or, having granted it a license to do business within the state, to revoke it, in its discretion. With the question of the expediency or policy of the statutes imposing these conditions upon foreign corporations the courts have little to do."

With this statement of the law this court fully concurs, with the exception that instead of the words "little to do" this court would say "nothing to do." If the sole power to say whether a foreign insurance corporation shall do business within the state of South Dakota is vested in the Legislative Assembly of such state, how can any law passed by the Assembly, which affects the right of foreign insurance corporations to do business in the state in the future, be called unconstitutional? The power to exclude a foreign insurance corporation from the state, or to prescribe the conditions upon which it may do business in the state in the future, is subject to no limitation of state or federal Constitutions. Either this is true, or the law as stated by counsel is incorrect; for there cannot exist at the same time the absolute power to exclude a foreign insurance corporation

if such power is subject to limitation. To say that a law, which absolutely excludes a foreign insurance corporation from the state or imposes conditions upon which the corporation may do business in the state in the future, is unconstitutional, involves a contradiction of terms, for the reason that all the right the foreign insurance corporation has to do business in the state must be found in whatever law the Legislative Assembly passes in that behalf. If such law would be unconstitutional, if attacked by a citizen of the state of South Dakota, still it would avail a foreign insurance corporation nothing to attack it, as such corporation is not a citizen entitled to all privileges and immunities of citizens in the several states. I am now speaking of legislation which prescribes rules for the future.

In the case of Doyle v. The Continental Insurance Co., 94 U. S. 535, 24 L. Ed. 148, a law of Wisconsin provided that before a foreign insurance corporation could do business in that state it should sign an agreement that in the event of its being sued in that state it would not remove the case to the federal courts, and if said foreign insurance corporation should violate said agreement it should be the duty of the Secretary of State to immediately cancel the license of said corporation to do business within the state. The law was confessedly invalid, so far as it sought to deprive the insurance company of the right to remove its cases to the federal courts, as was held in Insurance Co. v. Morse, 20 Wall 445, 22 L. Ed. 365. Still the Supreme Court in the case first cited said:

"The effect of our decision in this respect is that the state may compel the foreign company to abstain from federal courts or to cease to do business in the state. It gives the company the option. This is justifiable, because the complainant has no constitutional right to do business in that state. That state has authority at any time to declare that it shall not transact business there. This is the whole point of the case, and, without reference to the injustice, the prejudice, or the wrong that is alleged to exist, must determine the question. No right of the complainant, under the laws or the Constitution of the United States, by its exclusion from the state, is infringed, and this is what the state now accomplishes."

Counsel for complainants, in order to avoid the unquestioned law with reference to the power of the state over foreign insurance corporations, say in their brief:

"Complainants hold that this anti-compact law, in its general frame, scope, legislative purpose, operation, and effect, is to regulate and restrict all insurance companies doing business in the state, and with the prohibitory restrictions it conflicts with the Constitution of the United States and the state of South Dakota. There is nothing in this act that separates foreign insurance companies from other insurance companies, so the purpose of the act is directed to all insurance companies alike. If this act, for the reasons alleged in the bill of complaint, conflicts with the Constitution, both state and federal, as against domestic companies, then it is unconstitutional and void as to all other insurance companies."

The weakness of this proposition is found in the fact that it overlooks the principle that courts do not listen to a party whose objection to a law is not that his own rights are affected, but that the rights of some other party, who is not complaining, are. If this law which is attacked is unconstitutional as to domestic insurance companies, they may waive their right to attack it. Cooley's Const. Lim. (5th Ed.)

216. Certainly, until the domestic insurance companies do complain of the law, no court will, at the request of some third party, determine that the law is or is not unconstitutional as to them.

In the case of the People v. Brooklyn, etc., Ry., 89 N. Y. 75, the court says at page 93:

"A statute is assumed to be valid until some one complains whose right it invades. The landowners are not here complaining, and we do not know that they ever will. They have the power to waive a constitutional provision made for their benefit. Possibly they have already done so, or may in the future, we cannot know, and until they come and present their contract and invoke the constitutional protection no tribunal is called upon to grant it. The state and the landowners must be left to settle their own controversy. This one is between the state and the railroad companies. It is only when some person attempts to resist the operation of the act, 'and calls in the aid of the judicial power to pronounce it void as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained.' In re Wellington, 16 Pick. 96, 26 Am. Dec. 631. A legislative act may be entirely valid as to some classes of cases and clearly void as to others. So that we are to leave the landowners to vacate their contract with the state, if they have one, when they please and in their own way."

The same doctrine is stated in Cooley's Const. Lim. (5th Ed.) 197, and is elementary law.

Clearly, these complainants have the option either to cease business in the state of South Dakota or comply with the law in question. They have no constitutional rights that are infringed by it, and, if they have not, they cannot be heard to say that other corporations have. The attention of the court has been called to the cases of Niagara Fire Ins. Co. v. Cornell, 110 Fed. 816, in the United States Circuit Court for the District of Nebraska, and Greenwich Ins. Co. v. Carroll, 125 Fed. 121, in the Circuit Court, for the Southern District of Iowa. The opinions of the presiding judge in those cases have been examined, but I cannot concur in the result reached.

The demurrer is sustained.