Jones, J.
Section 9510 (2), General Code, authorizes insurance companies to do various kinds of insurance business as provided in that section; among others it is provided that they may “make insurance to indemnify employers against loss or damage for personal injury or death resulting, from accidents to employes or persons other than employes and to indemnify persons and corporations other than employers against loss or damage for personal injury or death resulting from accidents to other persons or corporations. But a company of another state, territory, district or country admitted to transact the business of indemnifying employers and others, in addition to any other deposit required by other laws of the state, shall deposit with the superintendent of insurance for *463 the benefit and security of all its policy holders, fifty thousand dollars in bonds,” etc.
It is claimed by the Superintendent of Insurance that under the provisions of that section the making of reinsurance contracts in the state of New York was, in effect, a doing of liability insurance business in this state; and that such business of reinsurance, under the circumstances related in the foregoing statement, was not permitted pmless the deposit of $50,000 was made with the Superintendent of Insurance for the benefit of policy-holders; and that the license of March 1, 1920, authorized the relator to transact only general casualty insurance and bonding business in Ohio and did not permit it, either directly or indirectly, to reinsure liability risks without first making the deposit referred to.
Section 9567, General Code, provides that insurance companies, other than life, organized under or incorporated by a foreign government shall file statements' of their condition and affairs in the office of the Superintendent of Insurance, and that if such statements are satisfactory, and the deposits required are maintained, the superintendent may issue renewal certificates of authority to do business in this state. Under another section of the Code all certificates of authority and licenses of companies authorized or admitted to do business relating to insurance other than life shall expire on the first day of March after they are issued.
Counsel for relator seek immunity from the requirement to make the additional deposit of $50,-000, under Section 9510, General. Code, basing their *464 claim upon the fact that the relator has not made a contract of insurance but of reinsurance; that by reason thereof it is not doing a liability insurance business in this state, but is simply doing the business of reinsuring liability business outside of the state with a foreign company admitted to make liability insurance in Ohio; and it is insisted that the Ohio insurance laws nowhere prevent reinsurance contracts of this character. We do not concur in this view. Without referring to other provisions of the insurance code it is evident to us that the policy of this state controlling contracts of insurance and reinsurance made by domestic and other companies in other classes of insurance applies to the business of making insurance or re-insuring liability risks. In some classes of insurance this policy has been expressed in definite terms. But Section 665, General Code, although not so specific as other statutes relating to reinsurance, forbids engagement in the insurance business directly or indirectly, unless the business is “expressly authorized by the laws of this state.” It may be conceded that the relator had the common-law , right of making reinsurance contracts. However, that contention is not available here, if this right of reinsurance is denied or if relator must first be authorized by the state law in accordance with the provisions of that section. Section 665, General Code, provides that:
“No company, corporation, or association, whether organized in this state or elsewhere, .shall engage either directly or indirectly in this state in the business of insurance, or enter into any con *465 tracts substantially amounting to insurance, or in any manner aid therein, or engage in the business of guaranteeing against liability, loss or damage, unless it is expressly authorized by the laws of this state, and the laws regulating it and applicable thereto, have been complied with.”
This section of the insurance code is sufficiently comprehensive to cover this case. It provides that no company, whether organized in this state or elsewhere shall enter-into any contract substantially amounting to insurance or in any manner aid therein or engage in the business of guaranteeing against liability, unless such company is expressly authorized by the laws of this state, and unless such laws regulating it have been complied with.
The contract of the relator made with the Hartford and other companies in New York state was made in aid of those companies and was in effect engaging in the business of guaranteeing such companies against a portion of their liabilities and risks that might be incurred under their policies written in this state. This indirect method of insurance, cannot be done under the sanction of that section without compliance with the laws regulating liability insurance, one of which was the compliance with Section 9510, General Code, which required a deposit to be made with the Superintendent of Insurance for the benefit of the policy-holders in the state. Since the making of contracts for reinsurance is conceded, the fact that such contracts were made in a foreign state by an alien company with other companies actually admitted to make *466 liability insurance in Ohio does not remove the ban of the statute, for the quoted section applies to all companies whether organized in this state or elsewhére.
We do not have the situation arising in the reported case of Allgeyer v. Louisiana, 165 U. S., 578. If it be conceded that the state might not interfere with an insurance contract made in a foreign state by a foreign company, non constat that the state may not impose conditions under which such foreign or alien company may be permitted to do insurance business in Ohio. We have not the question of contract before us. In that respect nothing is claimed. The state simply says, in effect, “you must comply with our laws, if you seek a license to do insurance business here.” While the relator, flaunting its violation of law, answers, “you must license my casualty and bonding business, if I do violate your law in other fields of insurance.” We have for consideration the question of license only. There is no inherent right for license existing in favor of the relator. That is granted by favor of the state and only upon conditions which the state imposes.
This distinction is made in Doyle v. Continental Ins. Co., 94 U. S., 535. There the state of Wisconsin imposed a condition that no foreign insurance company could transfer a state suit to a federal court without subjecting its license to revocation. Mr. Justice Hunt, in deciding the case, said:
“It is said that we thus indirectly sanction what we condemn when presented directly; to-wit, that *467 we enable the state of Wisconsin to enforce an agreement to abstain from the Federal courts. This is an ‘inexact statement.’ The effect of our decision in this respect is that the State may compel the foreign company to abstain from the Federal courts, or to cease to do business in the state. It gives the company the option. This is justifiable, because the complainant has no constitutional right to do business in that State; that State has authority at any time to declare that it shall not transact business there.”
We, therefore, hold that the relator’s contract of reinsurance, although made in the state of New York, under the circumstances detailed, was in violation of the provisions of Section 665, General Code.
The Superintendent of Insurance had issued a license to the relator to make casualty insurance and to do a bonding business only. Did he have the power to revoke the license so issued for those purposes upon discovering that the relator was violating Section 665, General Code? Since we have decided that it was a violation of law, the sole question remains whether or not the Superintendent of Insurance had the power of revocation.
Section 617, General Code, provides that “The superintendent of insurance shall see that the laws relating to insurance are duly executed and enforced.” The further provisions of that section require the Superintendent of Insurance to institute criminal proceedings for its violation. The *468 state might also have exercised the power of ouster by proceedings in quo warranto. ( State, ex rel., v. W. U. M. Life Ins. Co., 47 Ohio St., 167; State, ex rel., v. Ins. Co., 49 Ohio St., 440.) But these remedies are not exclusive. The more effectual way to execute and enforce the insurance laws under the provisions of that section was to revoke the license of the offending company as the Superintendent did. The law gives him continuing powers of supervision and requires him to see that the insurance laws are enforced. And while no specific power of revocation has been lodged in him, we are constrained to the view that this clause of the section gave him full authority to revoke the license of March 1, 1920, in order to secure compliance with the insurance laws. The just right of the relator can be safeguarded by proceedings in mandamus, and if it be found that the superintendent has revoked the license without legal cause, such proceedings afford it an adequate hearing where all questions can be judicially determined.
The relator seeks á writ of mandamus commanding the Superintendent of Insurance to issue a license to relator authorizing it to make the insurance so authorized in said license. Had the relator disclaimed the right to make liability reinsurance contracts, with which it is charged, and disavowed the further purpose of making such contracts, thereby confining its activities to casualty and bonding business, this court might be willing to grant the writ prayed for; but when it seeks that remedy without such disavowal, and while still violating the provisions of the state law re *469 lating to insurance, the relator cannot establish a clear right for this writ. Demurrer sustained and writ denied.

Writ denied.

Nichols, C. J., Matthias, Johnson, Hough, Wanamaker and Robinson, JJ., concur.