[L. A. No. 8969. In Bank.—April 22, 1927.]

## J. H. McKIM et al., Respondents, v. IMPERIAL IRRIGATION DISTRICT et al., Appellants.

[1] IRRIGATION DISTRICTS—BOUNDARIES—MOTIVES OF DIRECTORS IN CHANGING BOUNDARIES OF DIVISIONS.—Motives of the directors of an irrigation district, formed under the California Irrigation Act of 1911, in passing resolutions changing the boundaries of the divisions of the district, are immaterial, and the findings of the trial court thereon in an action to declare such resolutions void are also immaterial.

[2] ID.—EFFECT OF CHANGES—FINDINGS UNSUPPORTED BY EVIDENCE.—In such a case, where a comparison of the papers and maps in the record conclusively demonstrates that the resolutions made the divisions more equal in area, and estimates as to population, introduced by stipulation of counsel, on the whole, do not show that the population was made more unequal, but that between certain divisions it was more equalized and between others it was made slightly more unequal, the evidence does not sustain findings of the trial court that the changes effected by the resolutions did not "keep or make each or any of the divisions as nearly equal in area and population, or area or population, as may be practicable."

[3] ID.—DISCRETION OF DIRECTORS.—The directors of such an irrigation district are vested with power to change the boundaries of the divisions, "when they deem it advisable," provided such

change shall be made to keep each division as nearly equal in area and population as may be practicable.

[4] Id.—Elements for Consideration—Area and Population—Discretion.—In determining such question, both the element of area and population must be taken into consideration and equalized as nearly as practicable, and if equality in one element must be sacrificed somewhat for equality in the other, the question of which element shall be considered as the more important must rest in the broad discretion given to the directors.

[5] Id.—Numbering of New Divisions.—In such a case, it is immaterial whether the northerly division carved out of the old division should be designated number three or whether the southerly division should be so designated, where it does not appear that there has been an arbitrary change in the numbers.

(1) 40 Cyc., p. 820, n. 12 New.   (2, 3) 40 Cyc., p. 820, n. 12 New.
(4) 40 Cyc., p. 820, n. 12 New.   (5) 40 Cyc., p. 820, n. 12 New.

APPEAL from a judgment of the Superior Court of Imperial County.   Charles S. Burnell, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Charles L. Childers and D. B. Roberts for Appellants.

Harry W. Horton, Ault & Anderson and Philip Sterry for Respondents.

LANGDON, J.—This appeal is by the defendants from a judgment declaring null and void certain resolutions of the board of directors of the defendant Imperial Irrigation District, by which said board attempted to change the boundaries of the divisions of said Irrigation District in purported exercise of the discretion vested in said board by the California Irrigation District Act.   The judgment further decreed that the general irrigation district election held on or about the fourth day of February, 1925, and conducted in conformity to the divisions attempted to be effected by said resolutions, is void and of no effect, and as a consequence thereof the purported election of the defendants Mark Rose, C. W. Brockman, and Thomas Blair as directors of said Irrigation District for divisions five, one, and three, respectively, each is void.

The plaintiffs allege they are property owners in the Irrigation District. A demurrer to the first alleged cause of action was sustained and no amendment was made. The second cause of action, after setting forth the relation of the parties, the organization of the district, etc., charges that the resolutions changing the boundaries of the district were passed by three directors voting therefor without any belief on their part that such changes ought to be made; that said directors did not vote in favor of such resolutions in good faith and "did not vote to change and establish or change or establish the divisions as purported to be changed in said resolutions because they in truth and fact did find or claim that it was necessary for the convenience of any electors or for the best interests of said defendant district and that they did not in truth and fact in good faith establish the divisions as purported to be established in said resolutions on any basis of the same being as nearly equal in area and population as might be practicable. That in truth and fact the new claimed and purported division as set forth in said two resolutions did not create divisions more equal in area and population than were the said five divisions as established by said Board of Supervisors and that the said divisions as purported to have been established by said resolutions are not in truth and fact more equal in area and population or as equal in area and population as may be practicable." There are other allegations of a similar nature.

The Imperial Irrigation District was formed under the California Irrigation Act in 1911. At that time the area of the district was about 511,000 acres and the population less than 15,000. Upon the organization, the district was divided into five divisions, and these continued practically unchanged until the resolutions of November 25 and 26, 1924, as alleged in the complaint. At the time of these resolutions the population of the district had grown to over 50,000, and the divisions were grossly unequal in area and population, district number four, for instance, containing five times as much land and nearly twice as many people as division number one. This unsatisfactory condition was brought about by the inclusion of about 100,000 acres of land in the district, the natural growth of population and the extension of canals over the district. The resolution of

the board of directors of November 25th endeavored to change the divisions and the resolution of the succeeding day merely amended the former one by changing the numbers of two of the divisions. These resolutions were passed under the power given by the following provisions of the California Irrigation District Act:

"The board of directors when they deem it advisable for the best interests of the district and the convenience of the electors thereof may at any time, but not less than sixty days before an election to be held in the district, change the boundaries of the divisions or election precincts of the district or of both; provided, such changes shall be made to keep each division as nearly equal in area and population as may be practicable. . . . "

[1] At the outset of the trial, the court recognized the rule that the motive of the directors was immaterial in passing the resolutions in question if they had the power to pass them, and refused to admit testimony regarding the motives of the directors. These rulings were in harmony with the cases of *Stevenson* v. *Colgan,* 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089]; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535 [24 L. Ed. 148, see, also, Rose's U. S. Notes]; *State* v. *Cunningham,* 83 Wis. 90 [35 Am. St. Rep. 27, 17 L. R. A. 145, 53 N. W. 35].

It follows that the findings of the trial court upon the motives and intent of the directors are immaterial and are not sustained by the evidence. They merely repeat the allegations of the complaint concerning these matters and are directed to matters which the trial court expressly excluded from consideration.

[2] We come next to a consideration of the finding of the trial court to the effect that the changes effected by the resolutions in question did not "keep or make each or any of said divisions as nearly equal in area and population, or area or population, as may be practicable," and that said resolutions make said divisions less equal in area and population and less equal in population than were the divisions as they existed prior to November 25, 1924. A comparison of the tables and maps in the record conclusively demonstrates that the resolutions did make the divisions more equal in area and indeed respondent concedes this. The portion of the finding directed to that matter is not sustained by the evidence.

201 Cal.—8

Upon the question of population, the evidence was not direct and satisfactory. The only information on the subject in the record is a stipulation of counsel that the population was approximately five to one with reference to the registration in the divisions. But taking this estimate as accurate, it does not appear, upon the whole, that the population was made more unequal. Between certain divisions it was more equalized and between others it was made slightly more unequal.

[3] This brings us to a consideration of the discretion involved in changing the boundaries. The directors were vested with power to change the boundaries ''when they deem it advisable,'' provided such change shall be made to keep each division *as nearly equal* in area and population *as may be practicable*. This grants a very broad discretion and the nature of the district with its varying features is such that no absolute rule for division can be formulated. Some sections of the district are much more densely populated than others, some include incorporated cities and other sparsely settled agricultural lands. The absence of any general rules upon the subject and the impossibility of mathematical accuracy in the divisions are made evident by the suggestions of the respondents as to how the district might best have been divided according to their ideas of practicability. It is perfectly obvious from a survey of the maps and charts and relative scales appearing in the record that no division can be made which would equalize both area and population. [4] Both these elements must be taken into consideration and equalized as nearly as practicable, and if equality in one element must be sacrificed somewhat for equality in the other the question of which element shall be considered as the more important must rest in the broad discretion given to the directors. The directors are not compelled to defend their division as the most nearly perfect one possible, and this is conceded by respondents. Probably no two persons, acting in perfect good faith, would draw the same division lines upon the maps. It is because of this fact that a large discretionary power in the directors is necessary, and it follows as a matter of course that the courts should sustain them in their action unless a plain abuse of discretion appears from the records. We think, therefore, that

in making the changes in boundaries provided for in the resolution of November 25th the board of directors was exercising its authority within the discretion accorded to legislative bodies of this character.

[5] The other question presented by the appeal has reference to the numbering of the divisions carved out of old division number four. It was immaterial whether the most northerly division should be designated number three or whether the southerly division should be designated number three. In the resolution of November 25th the southerly division was designated number three and the northerly division was designated number four. In the amended resolution of November 26th, the northerly division was designated number three and the southerly division was designated number four. Since the resolution of November 25th and the amendment thereof of November 26th must be considered as one resolution, it does not appear that there has been any arbitrary change in numbers. It may well be that the effect of the final numbering of these divisions was to insure representation of both of these divisions on the board of directors of the district.

Under the facts of this case, we think the board of directors exercised its authority within the provisions of the governing act.

The judgment appealed from is reversed.

Curtis, J., Preston, J., Richards, J., Waste, C. J., and Seawell, J., concurred.

Shenk, J., being disqualified herein, did not participate.