# HARRISON, SECRETARY OF STATE OF OKLA-HOMA, *v.* ST. LOUIS & SAN FRANCISCO RAIL-ROAD COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 34.  Submitted November 4, 1913.—Decided February 24, 1914.

The judicial power of the United States, as created by the Constitution and provided for by Congress pursuant to constitutional authority, is wholly independent of state action and cannot be directly or indirectly destroyed, abridged, limited or rendered inefficacious by exertion of state authority.

The right conferred by law of the United States to remove a cause pending in a State to a Federal court on compliance with the Federal law is paramount and free from restraint or penalization by state action; and whether the right exists and has been properly exercised are Federal questions determinable by the Federal courts free from limitation or interference by state power.

A state statute which forbids a resort to the Federal courts on the ground of diversity of citizenship and punishes by extraordinary penalties any assertion of a right to remove a case under the Federal law and attempts to divest the Federal courts of their power to determine whether the right exists, is unconstitutional as an attempted exertion of state power over the judicial power of the United States.

A State cannot destroy the right to remove causes to the Federal courts by imposing arbitrary conditions as to state citizenship which render it impossible for one entitled to the right to avail of it.

A suit by a non-resident against officers of a State to enjoin the enforcement of a state statute which violates constitutional rights of complainant is not a suit against the State within the prohibition of the Eleventh Amendment.

A state statute which deprives those entitled thereto of a Federal right is not made constitutional by the fact that it does not discriminate but operates on all alike.

The Oklahoma statute of May 26, 1908, forbidding foreign corporations

from asserting any citizenship other than of that State and providing for the revocation and forfeiture of the charter of any corporation filing a petition for removal of a cause from the state, to the Federal, court, is unconstitutional as to corporations doing an interstate business as an attempt to restrain and penalize the assertion of a Federal right. *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535, and *Security Co.* v. *Prewitt*, 202 U. S. 246, distinguished.

Where the plain text of a state statute leaves no doubt that it is an attempt to prevent removal of causes to the Federal court, it will not be construed as a mere exercise of reasonable control over corporations.

When the construction of a state statute given by the state court and the state officers is plainly right, this court will not give the statute a different construction because under the one so given the statute is flagrantly repugnant to the Constitution.

THE St. Louis & San Francisco Railroad Company, a corporation chartered under the laws of Missouri and a citizen and resident of that State, owned, controlled or operated, for the purpose of interstate and intrastate commerce, many hundreds of miles of railway in Oklahoma and extending into adjoining States and beyond. These lines existed and were operated by the company, some, it may be, before the Territory of Oklahoma was organized and most, if not all, before Oklahoma was endowed with Statehood. The lines composing the system originated in various charters, some enacted by Congress accompanied with grant of land, and others by territorial grant. The unified system resulted from foreclosures, consolidations, etc. In 1908 the company was sued by a citizen and resident of Oklahoma, in a court of that State. On the ground of diversity of citizenship a petition and bond in due form and seasonable time were filed by the company for removal to the Circuit Court of the United States for the Western District of Oklahoma. What action was taken by the state court does not appear, but presumably the petition was denied—the following document having been issued by the Secretary of State.

"STATE OF OKLAHOMA.

*Revocation of Charter of St. Louis & San Francisco Railroad Company in Oklahoma.*

GUTHRIE, OKLAHOMA, *August 29th*, 1908.

In the District Court.

GERTRUDE GOODE, Administratrix of the Estate of Frank R. Goode, Deceased, Plaintiff,

vs.

ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, a Corporation, Defendant.

Petition for Removal to the Circuit Court of the United States.

STATE OF OKLAHOMA,

*Comanche County:*

Having received due and legal notice from J. T. Johnson, Judge of the District Court of Comanche County, that the above named corporation defendant, St. Louis & San Francisco Railroad Company has filed a petition for removal to the United States Court, a certified copy of which is on record in the office of the Secretary of State at the Capitol in the City of Guthrie in the State of Oklahoma.

Therefore, I, Leo Meyer, Assistant Secretary of State and now Acting Secretary of State of the State of Oklahoma by authority invested in me under section four of House Bill No. 131 approved by the Governor of the State of Oklahoma, C. N. Haskell, May 26th, 1908, do hereby declare the license of the said St. Louis & San Francisco Railroad Company to transact business in the State of Oklahoma forfeited and revoked.

In testimony whereof, I have set my hand and caused to be affixed the great Seal of the State.

Done at the city of Guthrie this twenty-ninth day of August, A. D., 1908.

[SEAL]     LEO MEYER,
          *Acting Secretary of State.*"

Thereupon the suit which is now before us was commenced by the Railroad Company against the Secretary of State and his assistant, seeking to enjoin them from giving effect to the certificate or in any way disturbing or interfering with the company in carrying on business in the State. With much amplitude of statement the source and history of the title of the various railroads forming part of the complainant's system in Oklahoma were enumerated. In addition to asserting that rights secured to the corporation by the state constitution had been denied by the action complained of, violations of the Constitution of the United States were specifically asserted on the following grounds: First, because the state law under which the Secretary of State had purported to act and the action taken thereunder constituted an unwarranted interference on the part of the State and its officers with the judicial power of the United States; second, because the attempt to exclude the Company from the State and prevent it from doing business therein, under the circumstances stated, was repugnant to the commerce clause of the Constitution, the due process clause of the Fourteenth Amendment and the contract clause, the latter being based on the assertion that the congressional and legislative acts by which the roads forming part of the system of the company had been incorporated, constituted contracts giving a right to do business in Oklahoma which that State had no power to impair. The court allowed a restraining order. The bill was demurred to on the ground of want of jurisdiction and want of equity. The demurrer was overruled. The court, in an elaborate opinion, expounded its reasons for so doing, holding that it had jurisdiction because of diversity of citizenship, the complainant being a citizen of Missouri and the defendants, citizens and residents of Oklahoma. In reaching this conclusion, the court analyzed the various transactions, foreclosure, and consolidations, etc., by which the railroad company had acquired the lines

.composing its system and held that there was nothing in any of them which destroyed the Missouri citizenship of the complainant. It moreover held in any event there was ample ground for jurisdiction because of the constitutional rights asserted.

As to the alleged want of equity in the bill, the court, after stating that the obvious purpose of the legislation under which the Secretary of State had acted as deduced from its text was to prevent the removal of causes from the State to a court of the United States, declared that the defendant in argument had so conceded. It was decided that the State was without authority to legislate to that effect and therefore the law in question and the action of the Secretary of State taken under it were void because of repugnancy to the Constitution of the United States. The answer which was then filed, admitted the incorporation of the complainant in Missouri and the citizenship in Oklahoma of the defendants, as well as the jurisdictional amount. The allegations of the complaint as to interference with the authority of the courts of the United States as to the commerce and contract clauses of the Constitution and the due process and equal protection clauses of the Fourteenth Amendment, were sought to be traversed by copious averments concerning the subject. Finally it was asserted, 1, that the Missouri corporation was never authorized to acquire any railroad in either the Indian or Oklahoma Territory and it therefore had no standing to assert as a Missouri corporation, its ownership and control of such roads as a basis for removal; 2, that in forming the line or lines of railway which constituted its system, the complainant had consolidated parallel and competing roads in violation of the anti-trust laws of the Territory and of the State of Oklahoma, as well as the law of the United States and therefore the corporation was not in a position to assert its Missouri citizenship; and 3, that the acquisition by the complainant of various

roads forming parts of its system which were covered by charters granted by Congress or by Oklahoma Territory was in conflict with such charters, and for this reason, moreover, the corporation could not be heard to assert its Missouri citizenship. An exception of the complainant to the relevancy of the three grounds just stated, was maintained, and they were stricken from the answer. By agreement between the parties, the present appellant, the successor in office as Secretary of State, was substituted as defendant. Thereupon, the case having been submitted to the court on bill and answer, a decree was entered perpetually enjoining the Secretary of State from giving effect to the order of revocation or interfering with or disturbing the complainant in the transaction of its business in the State. It was expressly decreed that the act of the legislature of Oklahoma upon which the action of the Secretary of State was taken was void and unenforceable because of its repugnancy to the Constitution of the United States. This appeal was then taken.

*Mr. Charles West*, Attorney General of the State of Oklahoma, and *Mr. Ben F. Harrison*, Secretary of State of the State of Oklahoma, for appellant:

The purpose of the act is to enforce the State's visitorial powers over corporations doing business within its borders.

It is immaterial what any persons may have thought as to, or even what were, the motives of the legislature. *Calder* v. *Michigan*, 218 U. S. 591.

That the act was not intended to hinder the Federal courts is evident because it necessarily fails to accomplish that purpose. *Southern Ry. Co.* v. *Allison*, 190 U. S. 330.

Constitutional and other statutory provisions which are to be considered as *in pari materia*, urge that this is but a visitorial statute.

The difference between the Oklahoma act and the other acts involved in former decisions of this court is that those acts discriminate against foreign corporations, while the Oklahoma act does not. It is not within the reasoning of *Herndon* v. *C., R. I. & P. Ry. Co.*, 218 U. S. 135; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Southern Co.* v. *Greene*, 216 U. S. 400.

In all of those cases the statute was held to be either direct interference with interstate commerce, or else discriminated against companies doing interstate commerce, and in each instance was held to violate the obligation of a contract.

The Oklahoma act does none of these things.

The Oklahoma act works no discrimination, and should be sustained under *Security Co.* v. *Prewitt*, 202 U. S. 248; *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *National Council* v. *State Council*, 203 U. S. 163.

The State may domicile within itself all corporations doing intrastate business within its limits. Thompson, Corporations, 2d ed., §§ 490 *et seq.*; *St. L. R. Co.* v. *James*, 161 U. S. 545; *Matrine* v. *Ins. Co.*, 53 N. Y. App. 339; *Safford* v. *Topeka Water Co.*, 52 Pac. Rep. 422; *Aspinwall* v. *Ohio & Miss. R. R. Co.*, 20 Indiana, 492; *Attorney General* v. *Lumber Co.*, 59 N. W. Rep. 1048; *Simmons* v. *Norf. & Balt. Stbt. Co.*, 113 N. Car. 147; *Attorney General* v. *Milwaukee Ry. Co.*, 45 Wisconsin, 579; *Commonwealth* v. *Pittsburg R. R. Co.*, 58 Pa. St. 26; *Rolling Stock Co.* v. *People*, 147 Illinois, 234; *State* v. *So. Pac. Co.*, 24 Texas, 78; *People* v. *Oakland Bank*, 1 Douglas (Mich.), 282; *Huglar* v. *Craigin Cattle Co.*, 40 N. J. Eq. 392.

The act is one properly within the police power of the State. Its purpose is to subject corporations doing intrastate business within the State to the full visitorial and regulative powers of the State, by requiring a domicile in the State, together with the attendant circumstances

of the persons of the officers, books, papers, etc., within Oklahoma.

The State has the same right to require a domestic domicile of a foreign corporation doing intrastate business, as it would have of its own corporations.

The State may oust a corporation repudiating its creative powers, whether such corporation be one of its own children or one of its foster children. See Comp. Laws Oklahoma, 1909, Snyder, *supra*, in §§ 1400 to 1406.

A foreign corporation is left the right to resort to the Federal courts upon any ground that a citizen of the State might resort to those courts, and in addition to the right given by the laws of the United States for a resort to the Federal court, either by removal or original action, because the domesticity of the citizen is not taken away, although the consequence of the claim of foreign domicile will be to prevent it from doing further intra business in the State. As long as the corporation is left free to exercise the option of remaining in the State as a domestic corporation, or of repudiating the domicile of the State, and losing its domestic privilege, this cannot be an unconstitutional exercise of state power, provided it is not administered in an arbitrary or discriminatory manner.

The act does not deprive any person of a privilege or deny any person equal protection of the law. It does not discriminate against foreign corporations.

The act is not an interference with interstate commerce. *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 45; *Louis. & Nash. R. Co.* v. *Kentucky*, 183 U. S. 512, 518.

*Mr. W. F. Evans* and *Mr. E. T. Miller* for appellee:

The evident purpose of the act of 1908 is to prevent foreign corporations doing business in Oklahoma from invoking jurisdiction of the Federal courts in that State. If such be the purpose of the act, it is ineffectual to that end. *Buck Stove Co.* v. *Vickers*, 226 U. S. 205; *Herndon* v.

*C., R. I. & P.*, 218 U. S. 135; *Ludwig* v. *Western Union*, 216 U. S. 146; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *St. L. & S. F. K. R. Co.* v. *James*, 161 U. S. 545; *Southern Co.* v. *Greene*, 216 U. S. 400; *Southern Pac. Co.* v. *Denton*, 146 U. S. 202; *Southern R. R. Co.* v. *Allison*, 190 U. S. 326; *Textbook Co.* v. *Pigg*, 217 U. S. 91; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1.

Appellee having the right to remove the case from the state to the Federal court, cannot be lawfully excluded from the State for exercising that constitutional right, because—

It has a contract with the United States, permitting it to remain in the State of Oklahoma for the purpose of operating its railroad.

It had a contract with the Territory of Oklahoma, which is protected by the Constitution of the United States and by the provision of the constitution of Oklahoma, preserving all rights previously existing.

To exclude appellee from the State would be to impair the obligation of those contracts, in violation of Federal and state constitutional guaranties.

To exclude appellee from the State would be to destroy its property in that State, aggregating many millions of dollars, and to deprive appellee of its property without due process of law. *Am. Smelting Co.* v. *Colorado*, 204 U. S. 103; *California* v. *Pac. Ry. Co.*, 127 U. S. 1; *Cessna* v. *United States*, 169 U. S. 165; *Hager* v. *Reclamation Dist.*, 111 U. S. 701; *Holden* v. *Hardy*, 169 U. S. 366; *Kansas Pac. Ry. Co.* v. *A., T. & S. F. Ry.*, 112 U. S. 414; *Londoner* v. *Denver*, 210 U. S. 373; *New Jersey* v. *Yard*, 95 U. S. 104; *N. Y., L. E. & W. Ry.* v. *Pennsylvania*, 153 U. S. 628; *Pennsylvania* v. *Wheeling Co.*, 13 How. 518; *Powers* v. *Detroit & G. H. Ry.*, 201 U. S. 559; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 392; *Roberts* v. *Nor. Pac. Ry. Co.*, 158 U. S. 1; *St. Paul &c. Ry. Co.* v. *Phelps*, 137 U. S. 528; *Smith* v. *A., T. & S. F. Ry.*, 64 Fed. Rep. 272; *United States* v.

*Percheman,* 7 Pet. 51; *Vincennes* v. *State,* 14 How. 263.

The act is void because it is an indirect interference with, and imposes a direct burden upon, interstate commerce. *Atl. Coast Line* v. *Wharton,* 207 U. S. 328; *Buck Stove Co.* v. *Vickers,* 226 U. S. 205; *Darnell* v. *Memphis,* 208 U. S. 113; *Gibbons* v. *Ogden,* 9 Wh. 1; *Heiman* v. *Southern Ry. Co.,* 203 U. S. 270; *Ludwig* v. *West. Un. Tel. Co.,* 216 U. S. 146; *Pensacola Tel. Co.* v. *West. Un. Tel. Co.,* 96 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1.

Appellee did not consolidate with the various corporations specified in the amended bill.

The order attempting to revoke the license of appellee is void. *Van Wyck* v. *Knevals,* 106 U. S. 360.

The act is void because in violation of the Eighth Amendment to the Constitution of the United States and § 18, Art. II of the constitution of Oklahoma, forbidding the imposition of excessive fines. *Ex parte Young,* 209 U. S. 123.

MR. CHIEF JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

We have stated the case only to the extent necessary to make clear the questions essential to be decided.

The assignments of error in general terms assail the overruling of the demurrer, the striking of matter from the answer and the final decree. The propositions, however, which are urged at bar to sustain these general assignments are numerous and we think in some aspects redundant. To consider them in the order in which they are urged would besides giving rise to repetition tend to produce confusion. We hence disregard the mere order in which they are stated in the argument and come to consider the fundamental propositions necessary to be taken

into view in order to determine whether the court below was right in holding that the law under which the Secretary of State acted, as well as the action of that officer, were void because inconsistent with the judicial power of the United States, reserving until that is done such separate consideration of the propositions relied on as we may deem it necessary to make.

It may not be doubted that the judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of state action and which therefore the several States may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it. Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests and the lines which define it are so broad and so obvious that, unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few occasions for their statement and application. However, though infrequent, occasions have not been wanting, especially on the subject of the removal of causes with which we are now dealing, where the general principle has been expounded and applied so as to cause the subject, even from the mere point of view of authority, to be beyond the domain of all possible controversy.

See for general question.*Ex parte Young*, 209 U. S. 123; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 391; *Hess* v. *Reynolds*, 113 U. S. 73, 77; *Madisonville Traction Co.* v. *Mining Co.*, 196 U. S. 239, 252, and on subject of removal, *Southern Pacific Company* v. *Denton*, 146 U. S. 202; *St. Louis & S. F. Ry. Co.* v. *James*, 161 U. S. 545;

*Southern Railway Company* v. *Allison,* 190 U. S. 326;
*Herndon* v. *C., R. I. & P.,* 218 U. S. 135.

With this general principle in hand let us come to fix
one or more of the essentials of the right to remove as a
prelude to testing the assailed statute and the action
taken under it.   In the first place, the right unrestrained
and unpenalized by state action on compliance with the
forms required by the law of the United States to ask the
removal of a cause pending in a State to a United States
court is obviously of the very essence of the right to remove
conferred by the law of the United States.  In the second
place, as the right given to remove by the United States
law is paramount, it results that it is also of the essence of
the right to remove, that when an issue of whether a
prayer for removal was rightfully asked arises, a Federal
question results which is determinable by the courts of the
United States free from limitation or interference arising
from an exertion of state power.   In the third place, as the
right freely exists to seek removal unchecked or unbur-
dened by state authority and the duty to determine the
adequacy of a prayed removal is a Federal and not a state
question, it follows that the States are in the nature of
things without authority to penalize or punish one who has
sought to avail himself of the Federal right of removal on
the ground that the removal asked was unauthorized or
illegal.  Let us come then to the text of the statute with
the object of determining its constitutionality.

Its first section provides "that the domicile of every
person, firm or corporation conducting a business in
person, by agent, through an office, or otherwise transact-
ing business within the State of Oklahoma, and which has
complied with or may comply with the constitution and
laws of the State of Oklahoma, shall be for all purposes
deemed and held to be the State of Oklahoma."  The
second section provides for the immediate revocation of
"the license or charter to do business within the State of

Oklahoma of every person, firm or corporation conducting a business in person, by agent, through an office or other-wise transacting business within said State of Oklahoma, who shall claim or declare in writing before any court of law or equity within said State of Oklahoma, domicile within another State or foreign country." The third section makes it the duty of the judge of any court before which any claim of foreign domicile is made within the contemplation of the second section to at once make report of the fact to the Secretary of State and to transmit to that officer a copy of the claim, and the fourth section imposes on the Secretary of State the duty immediately on the receipt of such report and copy of the declaration to "declare the license or charter of any person, firm or corporation so filing said claim or declaration, forfeited and revoked," and the fifth causes it to be a misdemeanor subjecting to a penalty of not less than one thousand nor more than five thousand dollars each day or part of day, for any person whose license or charter is revoked to do business in Oklahoma in conflict with the prohibitions of the statute.

While the provisions of the statute are dependent one upon the other and are unified in the sense that they all are components of a common purpose, that is, tend to the realization of one and the same legislative intent, its provisions nevertheless, for the purpose of analysis, are plainly two-fold in character, that is, one, the compulsory citizenship and domicile within the State which the first section imposes and the other the prohibition which the statute pronounces against any assertion in a court of the existence of any other citizenship and domicile than that which the statute ordains and the means and penalties provided for sanctioning such prohibition. Although theoretically, the first would seem to be the more primary and fundamental of the two, since the second after all consists but of methods provided for making the first

operative, the second from the point of view we are examining is the primal consideration, since it directly deals with the assertion in a state court of a right to remove and provides the mechanism which was deemed to be effectual to render the assertion of such right impossible. In other words, the difference between its two provisions is that which exists between an attempt on the one hand to render the enjoyment of a Federal right impossible by arbitrarily creating a fictitious legal status incompatible with the existence of the right and on the other hand the formulation of such prohibitions and the establishment of such penalties against the attempt to avail of the Federal right as to cause it to be impossible to assert it. Coming then to consider the statute from the second or latter point of view, we think it is clear that it plainly and obviously forbids a resort to the Federal courts on the ground of diversity of citizenship in the contingency contemplated, punishes by extraordinary penalties any assertion of a right to remove under the laws of the United States, and attempts to divest the Federal courts of their power to determine, if issue arises on the subject, whether there is a right to remove. Indeed, the statute goes much further, since when an application to remove is made, in order to prevent a judicial consideration of its merits even by the state court, it in effect commands the judge of such court on the making of the application to refuse the same and to certify the fact that it was made to a state executive officer to the end that such officer should without judicial action strip the petitioning corporation of its right to do business, besides subjecting it to penalties of the most destructive character as a means of compelling acquiescence. When the nature of the statute is thus properly appreciated, nothing need be further said to manifest its obvious repugnancy to the Constitution or to demonstrate the correctness of the decree of the court below.

The conclusion just stated leaves us only the duty of

separately and briefly referring to some of the propositions pressed in argument: *a*, the contention that because the object of the suit was to enjoin state officers from violating the constitutional rights of the complainant, it was therefore a suit against the State and not maintainable, is so plainly in conflict with the settled doctrine to the contrary that we do not further notice it. *b*, The contention so much insisted upon, that the act should not be declared unconstitutional because it does not discriminate, we assume refers to the provision of the statute creating an arbitrary standard of state citizenship and domicile; but as we see no possibility of separating that provision from the unconstitutional attempt to prevent access to the courts of the United States, there is no occasion to further deal with the subject of discrimination. If, however, we were to separately consider it, at once it is to be observed that the contention proceeds upon a self-evident misconception which is this, that if only wrong be indiscriminately done it becomes rightful. *c*, The proposition that the constitutionality of the statute and the action taken under it, is supported by the decisions in *Doyle* v. *Continental Insurance Company*, 94 U. S. 535 and *Security Company* v. *Prewitt*, 202 U. S. 246, is we think plainly unfounded. Those cases involved state legislation as to a subject over which there was complete state authority, that is, the exclusion from the State of a corporation which was so organized that it had no authority to do anything but a purely intrastate business, and the decisions rested upon the want of power to deprive a State of its right to deal with a subject which was in its complete control, even though an unlawful motive might have impelled the State to exert its lawful power. But that the application of those cases to a situation where complete power in a State over the subject dealt with, does not exist, has since been so repeatedly passed upon as to cause the question not to be open. *Western Union Telegraph Company* v. *Kansas*,

216 U. S. 1; *Pullman Company* v. *Kansas, ib.* 56; *Textbook Company* v. *Pigg,* 217 U. S. 91; *Buck Stove & Range Co.* v. *Vickers,* 226 U. S. 205, and *Herndon* v. *C., R. & I. P. Ry.,* 218 U. S. 135. The grounds of the decision in the last case . show the extremely narrow scope of the rulings in the *Doyle* and *Prewitt* cases, and render their inapplicability to this case certain. Indeed, the ruling in the *Herndon Case* and in those subsequent to the *Doyle* and *Prewitt* cases, most of which were reviewed in the *Herndon Case,* demonstrates that no authority is afforded by those two cases for the conception that it is within the power of a State in any form, directly or indirectly, to destroy or deprive of a right conferred by the Constitution and laws of the United States. *d,* The matters which the court below ordered stricken from the answer were irrelevant to the issue for decision even if it be conceded hypothetically that they had merit, because under that assumption they would have only been properly cognizable if presented in an appropriate manner and at the proper time to the Federal tribunal which had a right to pass upon them when considering the propriety of the removal which was prayed. *e,* We consider that the plain text of the statute, the meaning affixed to it by the state court when the application to remove was made, the subsequent action taken by the state officers, the character of the pleadings, the concession as stated by the court below which was made in the argument, all leave no room for the contention that at all events the statute should be construed not as an attempt on the part of the State to prevent the removal of causes, but simply as an effort on the part of the State to exert reasonable control over corporations within its borders. The argument that because the statute, if understood as we understand it, is so flagrantly repugnant to the Constitution as to suggest the impossibility of believing that it was enacted with that end in view but repudiates, as we have seen, the action of the state court and of the

state officers under it and the whole course of the trial, and comes at last to the contention that the more plainly an enactment violates the Constitution, the more urgent the duty of deciding that it does not do so.

*Affirmed.*