COPPER QUEEN CONSOL. MINING CO. v. JONES et al.

SAME v. GEARY et al.

(District Court, D. Arizona. November 7, 1916.)

REMOVAL OF CAUSES ⬥3—AUTHORITY OF STATE TO PROHIBIT.

Civ. Code Ariz. 1913, par. 2228, declares that if any foreign corporation licensed as provided to do business in the state shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of the state, remove such suit to the federal court or shall institute any proceeding against any citizen of the state in any federal court, its license shall be revoked, while paragraph 2243 declares that where any foreign corporation, having instituted an action in the federal courts or removed one to such court, shall thereafter transact business within the state, it shall be guilty of a misdemeanor.

*Held,* that the judicial power of the federal courts as created by the federal Constitution and provided for by Congress pursuant to its constitutional authority is wholly independent of state action, such statutes are invalid, and their operation against a foreign corporation doing business in Arizona, which removed an action brought against it to the federal court, will be enjoined.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. ☜3.]

In Equity. Bills by the Copper Queen Consolidated Mining Company, a corporation, against Wiley E. Jones and others and W. P. Geary and others to enjoin enforcement of Civ. Code Ariz. 1913, pars. 2228, 2243, on the ground that they are unconstitutional. Temporary injunction granted.

. Ellinwood & Ross and Clifton Mathews, all of Bisbee, Ariz., for complainant.

Wiley E. Jones, Atty. Gen., and R. Wm. Kramer and G. W. Harben, Asst. Attys., Gen., for defendants.

Before MORROW, Circuit Judge, and VAN FLEET and SAW-TELLE, District Judges, convened under section 266 of the Judicial Code of the United States (Act March 3, 1911, 36 Stat. 1162, as amended by Act March 4, 1913, 37 Stat. 1013).

MORROW, Circuit Judge. The jurisdiction of this court is invoked by the complainant upon the ground of diverse citizenship, and also upon the ground that the controversy is one arising under the Constitution and laws of the United States. The complainant is a corporation organized and existing under the laws of the state of New York and is a resident and citizen of that state; and the defendants are residents and citizens of the state of Arizona, and collectively constitute the Corporation Commission of that state. The complainant is now, and has been for more than 30 years, engaged in the business of owning, controlling, and operating mines and mining claims in the state of Arizona and of extracting valuable ores from said mines; also, of purchasing ores and concentrates in the republic of Mexico and in the state of New Mexico and importing the same into the state of Arizona for treatment, reduction, and smelting at smelters and reduction works owned by the complainant in Arizona. During all this time it has been engaged in the business of shipping and selling in interstate and foreign commerce the metals and other products obtained from said ores and concentrates, there being no market therefor within the territory or state of Arizona. For this business, the complainant has had a license from the Corporation Commission under the statute of the state, hereinafter mentioned.

On the 14th day of February, 1912, the territory of Arizona was admitted into the Union as a state, and on the 12th day of June, 1912, the Legislature of Arizona passed an act, the sections of which were subsequently incorporated into the Revised Statutes of the state, 1913, as paragraphs 2226 and 2228. The first-mentioned paragraph required all foreign corporations doing business within the state to pay a license fee of $15 to the Corporation Commission for a license to do business in the state; and the last-mentioned paragraph provided that if

any company mentioned in section 2226 of the Revised Statutes "shall, without the consent of the other party to any suit or· proceeding brought by or against it in any court of this state, *remove said suit or proceeding to any federal court, or shall institute any suit or proceeding against any citizen of this state in any federal court, it shall be the duty of the corporation commission forthwith to revoke the license issued to said company to do, or transact business in this state,* and to publish such revocation in some newspaper of general circulation published in this state; and every act done by said corporation subsequent to said revocation of said license, shall be utterly void." The Legislature of the state on the 7th day of May, 1912, passed an act which was subsequently incorporated into the Revised Statutes, 1913, as paragraph 2243. That section provides as follows:

"If any foreign corporation shall, without the consent of the adverse party, *remove to a federal court any action pending against it in any court of this state, or institute an action against a citizen of this state in a federal court of this state,* such action on the part of the corporation shall forfeit its right to transact or carry on any business in this state; and such corporation, and any officer, agent, or employé thereof, who shall thereafter transact or engage in any business or employment for such corporation in this state, shall be severally guilty of a misdemeanor, and, upon indictment or information and conviction therefor in the superior court of any county in which such corporation, or any officer, agent or employé thereof, transacts or· engages in any business, be fined for each offense not less than five hundred dollars nor more than one thousand dollars."

At the time of the admission of the state into the Union on February 14, 1912, and the passage of the Act of May 7, 1912, and the Act of June 12, 1912, complainant owned real property in said state of the value of more than $32,000,000 and personal property of the value of more than $250,000, and at that time complainant was extracting from its mines and mining claims and was treating, reducing, and smelting at its mills and reduction works an average of 700,000 tons of ore per annum, and was shipping, marketing, and selling the entire mineral product in interstate and foreign commerce in the average amount of 80,000,000 pounds of copper per annum, and was purchasing in the republic of Mexico and in the state of New Mexico and importing, treating, reducing, and smelting in the state of Arizona an average of approximately 180,000 tons of ores and concentrates of the approximate value of $6,000,000 per annum, and marketing and shipping the product in interstate and foreign commerce, there being no market for such product in the state of Arizona; the proceeds and sales amounting to an average of $18,500,000 per annum.

It is alleged in the complaint that on the 7th day of March, 1916, a suit was brought against the complainant in the superior court of the state of Arizona in and for the county of Cochise by Vinnie S. Minica, as administrator of the estate of Jose Martinez, deceased; and on the 25th day of March, 1916, the complainant as defendant in that suit filed in said superior court its petition and bond for the removal of said suit to this court; and on the 1st day of April, 1916, said suit was, without the consent of said Vinnie S. Minica, duly removed to this court. It is further alleged that the defendants, as members of the Corporation Commission of Arizona, proceeding under para-

graph 2228 of the Revised Statutes of the state, threaten to, and unless restrained by this court will, issue an order of said commission declaring the license, right, and authority of the complainant to transact business within the state of Arizona canceled, revoked, and annulled, to the great and irreparable damage of the complainant; and said Corporation Commission, unless restrained by this court, will proceed under paragraph 2243 of the Revised Statutes of the state to prosecute to judgment and conviction the complainant, its officers, agents, and employés, subjecting it and them to numerous and vexatious actions and proceedings to recover ruinous and confiscatory penalties, to complainant's great and irreparable damage.

Upon the filing of the complaint, a temporary restraining order was issued pending the assembling of this court in accordance with the provisions of section 266, Judicial Code of the United States (Act March 3, 1911, c. 231, 36 Stat. 1162, as amended by Act March 4, 1913, c. 160, 37 Stat. 1013 [Comp. St. 1913, § 1243]). The present hearing is upon an application for a temporary injunction restraining the defendants from enforcing, or attempting to enforce, the provisions of paragraphs 2228 and 2243 of the Revised Statutes of Arizona, and from canceling, revoking, or attempting to cancel or revoke, the license and right of the complainant to transact business in the state of Arizona, and from prosecuting any suit under paragraph 2243 of the Revised Statutes of the state.

We think the questions involved in these cases have been very fully determined by the Supreme Court of the United States in the various cases that have been before that court where statutes of the states, of the character here in question, have been considered. Home Ins. Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Southern Pacific Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942; Security Mutual Life Ins. Co. v. Prewitt, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, 6 Ann. Cas. 317; Herndon v. Chicago, Rock Island & Pacific Ry. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Roach v. Atchison, Topeka & Santa Fé R. Co., 218 U. S. 159, 30 Sup. Ct. 639, 54 L. Ed. 978; Harrison v. St. Louis & San Francisco R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187; and finally in two cases that have recently been before the Supreme Court from the state of Wisconsin (Donald v. Philadelphia & Reading Coal & Iron Company and Frear v. Western Union Telegraph Company, decided May 22, 1916, 241 U. S. 329, 331, 36 Sup. Ct. 563, 60 L. Ed. 1027), where the questions were almost identically the same, if not the identical questions here presented, and we find that the argument made here in support of the state statute is precisely the same as that made before the Supreme Court in those cases, so that there is not a single question or point in argument in these cases that has not been presented to the Supreme Court and by that court fully considered and determined.

In the case of Harrison v. St. Louis & San Francisco R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187, Chief Justice White, speaking of a similar statute, said:

"It may not be doubted that the judicial power of the United States, as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of state action and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it. Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests, and the lines which define it are so broad and so obvious, that, unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few occasions for their statement and application. However, though infrequent, occasions have not been wanting, especially on the subject of the removal of causes with which we are now dealing, where the general principle has been expounded and applied so as to cause the subject, even from the mere point of view of authority, to be beyond the domain of all possible controversy."

Then the Chief Justice, referring to the cases of Doyle and Prewitt, which have been cited here on behalf of the state as authority to support the statute of this state, says:

"Those cases involved state legislation as to a subject over which there was complete state authority, that is, the exclusion from the state of a corporation which was so organized that it had no authority to do anything but a purely intrastate business, and the decisions rested upon the want of power to deprive a state of its right to deal with a subject which was in its complete control, even though an unlawful motive might have impelled the state to exert its lawful power. But that the application of those cases to a situation where complete power in a state over the subject dealt with does not exist has since been so repeatedly passed upon as to cause the question not to be open."

Then in these last two cases of Donald v. Philadelphia & Reading Coal & Iron Co. and Frear v. Western Union Telegraph Co., the Supreme Court declined to go into any argument upon the question, simply saying that:

"Consideration of the Wisconsin statutes convinces us that they seek to prevent appellees and other foreign commercial corporations doing local business from exercising their constitutional right to remove suits into federal courts. To accomplish this is beyond the state's power. * * * We are asked in effect to reconsider the question discussed and definitely determined in Harrison v. St. L. & San Francisco R. R., 232 U. S. 318 [34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187]. We there said ([232 U. S.] 328 [34 Sup. Ct. 335, 58 L. Ed. 621, L. R. A. 1915F, 1187]): 'The judicial power of the United States, as created by the Constitution and provided for by Congress pursuant to its constitutional authority, is a power wholly independent of state action and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious.'"

These last two cases are not only controlling as a matter of general judicial authority, but in the applicability of the questions there determined to the facts in the two cases now before us. The complainant in the Philadelphia & Reading Coal & Iron Company Case, as in these cases now before us, was a commercial corporation; and it, like the complainant in these cases, was engaged in interstate commerce. In the Philadelphia & Reading Coal & Iron Company Case the commerce consisted in the shipping and selling of coal, while in the present cases it consists in the shipping and selling of copper, in

interstate commerce. The cases are identical in all the elements involving the constitutional ·questions raised, and we must therefore hold that paragraphs 2228 and 2243 of the Arizona Revised Statutes of 1913 are unconstitutional and void.

The counsel for the complainant will prepare an interlocutory decree providing for a temporary injunction pending the litigation.