**MAYO v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO.**

Civ. No. 3638.

United States District Court
W. D. Louisiana, Lake Charles Division.
Aug. 16, 1952.

Joseph E. Bass, Jr., Bass & Brame, Lake Charles, La., for plaintiff.

R. W. Farrar, Jr., King, Anderson & Swift, Lake Charles, La., for defendant.

DAWKINS, Chief Judge.

Plaintiff, a citizen of Texas, sued defendant, a corporation under the laws of Switzerland, alone in damages for injuries alleged to have been caused by the negligence of Williams Brothers-Davis Company (called Williams), its insured, also a citizen of the State of Texas. It was alleged that a pickup truck belonging to Williams struck the rear of plaintiff's automobile, causing the injuries. The demand was for $25,000.

Defendant moved to dismiss the complaint (I) on the ground that it failed to state a claim for relief because (a) the policy was a Texas contract issued and delivered in that state; (b) that both defendant and its insurer were nonresidents of the State of Louisiana; and (3) that the policy contract contained a "no action" clause reading as follows:

"No action shall lie against the company, unless as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined, either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."; and

(d) that the direct action laws of the State of Louisiana "have no application", and in the alternative, that their provisions cannot be applied here for the reason that the same are violative of the federal Constitution.

(II). Further, that for the reason stated, in Paragraph (I), this court is without jurisdiction rationae personnae et materiae.

(III). In the alternative, defendant moved for summary judgment based upon the several grounds above and upon affidavits and documents attached thereto. Attached were the following:

"D–1" Affidavit of J. M. Chance that he is. Assistant Secretary of Williams, the insured, whose home office is in the City of Houston, Texas, and that the photostatic copy of the policy attached was "the only policy in effect December 6, 1951" covering liability under the contract involved in the accident; and that it was "requested by and delivered to Williams" in Houston. A copy of the policy is attached to the said affidavit.

"D–3 and 4" are affidavits of two Texas lawyers that the "no action" clause is valid and enforcible in that state.

"D–6" Affidavit of the "Deputy U. S. Manager" of the defendant that the latter's "home office" is in the City of Chicago, Illinois; that the policy sued upon, "AC 6197100", was written in the City of Chicago but "did not become effective until countersigned by" its agency in San Antonio, Texas, and was delivered to the insured at Houston.

Plaintiff's Evidence.

Thereafter, plaintiff filed interrogatories addressed to defendant which were answered in due course and from which it appears that defendant has in its possession a true copy of the policy in suit, and that the photostatic copy filed with the motion for summary judgment includes the "entire policy", but that defendant "did not file copies of schedules pertaining to location of vehicles and other attachments which we did not deem concerned in our motion to dismiss and motion for summary judgment"; that the "portions of the policy not included * * * contained a reference to the places where the vehicle covered by said policy is to be used"; that the original policy herein is still in possession of Williams, the insured; and the witness at-

tached to his answer "photostatic copy of the schedules, attachments and documents" to the policy in suit.

The policy was dated at Houston, Texas, and covered a period of one year from April 24, 1951–1952. It also contained the provisions quoted above as "no action" clauses.

Plaintiff also offered in evidence on the motion for summary judgment, the following:

"P–1" Certificate from the Louisiana Secretary of State issued to the defendant to do an insurance business, including "liability" insurance, dated April 25, 1952, which contains a statement that "this company was first authorized in this State on April 21, 1924";

"P–2" Consent to be sued in a direct action, as provided by the laws of Louisiana "whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided the accident occurred within the State of Louisiana", dated March 2, 1951.

This case presents a clear illustration of what litigants will do under these extraordinary statutes of the State of Louisiana, the inspiration for whose passage is left to the imagination, although some light may be had from the recent activities of a group of members of the Bar which sought to take away from the State Courts of Appeal the power to pass upon the facts in civil jury cases. Both the plaintiff and the insured Williams, as above indicated, are citizens of the State of Texas, and the complaint could have been brought against the latter in the State Court at Houston, but plaintiff chose to bring it here where he could ignore the real alleged tort-feasor and expose this foreign insurance company alone to the consideration of a jury of inexperienced laymen, with all the effects mentioned in Bish v. Employers' Liability Assur. Corp., D.C., 102 F.Supp. 343, and Bayard v. Traders & General Ins. Co., D. C., 99 F.Supp. 343. No doubt the real reason was that he would have had to sue that fellow-citizen alone without being permitted to let the jury know there was any lia-

bility insurance, a requirement clearly intended to protect the insurer from the prejudice which the Texas law assumes would be experienced in litigation of this kind.

As pointed out by this court in Bish and Bayard, supra, no difference can be seen between the enforced surrender of the constitutional right of freedom of contract in other states, and a requirement, as a condition to doing business in a given state, such foreign corporation should surrender the right of removal to the federal courts. As a matter of fact, Statutes Nos. 541 and 542 of 1950, LSA–R.S. 22:655, 22:-983, subd. E, as bills originally introduced by six members of the State Legislature, provided that the accident must occur "within the State of Louisiana or the injured person or his or her heirs should be *residents of the State*". (Emphasis by the writer).

██ The effect of such laws is to deprive the insurer of its property, the benefits of the contract valid in the state where made without due process of law contrary to the Fourteenth Amendment to the federal Constitution.

Insofar as the state statute here requires an insurance company to file a written consent to be sued in a direct action, with respect to contracts made outside of Louisiana, it constitutes an attempt to give that law effect, not merely within its own borders, but extending extra-territorially into all other states of the union, as well as foreign countries, even though the rights of the contracting parties may have been validly fixed under the laws of the other states or countries. In other words, it undertakes, by legislative fiat, to delete from the contracts the requirement for liquidating the claim as between the injured person and the one who caused his injuries, who are the real parties to the controversy contemplated in the diversity provisions of the federal constitution and statute. By this course, the lawmaker, in effect, says to the insurer, while you may protect yourselves fully in other states, you must surrender that right as a condition to doing business in Louisiana, no matter where your contract was made. It is not believed that this can be done any more effectively

than exacting the surrender of the right to resort to the federal courts.

In Harrison v. St. Louis & San Francisco R. R. Co., 232 U.S. 318, 34 S.Ct. 333, 337, 58 L.Ed. 621, the State of Oklahoma, under its statutes, sought to revoke the license of the railroad company to do business in that state because it had applied, as the defendant, to remove an action from the state to the federal court. That statute was quite vicious and imposed both civil and criminal penalties. It provided that any one who had qualified to do business in the State should, for all purposes, be held "to be domiciled in" Oklahoma, and if they "declared in writing before any court" of the State a different domicile, their license should be "immediately revoked", and they should pay a fine of $1,000 to $5,000 a day for doing business thereafter. ·

Harrison filed suit against the railroad company in the state court and the latter timely applied to remove it to the federal court; whereupon the machinery of the statute was promptly set in motion for a revocation of its license. The railroad followed with a proceeding in equity to enjoin its enforcement on the ground that the statute was invalid under the federal constitution. In affirming the judgment of the District Court sustaining that contention, Chief Justice White, as the organ of the Supreme Court, analyzed the prior jurisprudence, and among other things, said:

· "Those cases involved state legislation as to a subject over which there was complete state authority; that is, the exclusion from the state of a corporation which was so organized that it had no authority to do anything but a purely intrastate business, and the decisions rested upon the want of power to deprive a state of its right to deal with a subject which was in its complete control, even though an unlawful motive might have impelled the state to exert its lawful power. But that the application of those cases to a situation where complete power in a state over the subject dealt with does not exist has since been so repeatedly passed upon as to cause the question

not to be open. Western Union Telegraph Company v. Kansas, 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; Pullman Company v. Kansas, 216 U.S. 56, 30 S. Ct. 232, 54 L.Ed. 378; International Textbook ·Company v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann.Cas. 1103; Buck ·Stove & Range Co. v. Vickers, 226 U.S. 205, 33 S.Ct. 41, 57 L.Ed. 189, and Herndon v. Chicago, R. I. & P. Ry., 218 U.S. 135, 30 S.Ct. 633, 54 L.Ed. 970. The grounds of the decision in the last case show the extremely narrow scope of the rulings in the Doyle [v. Continental Ins. Co., 94 U.S. 535, .24 L.Ed. 148] and Security Mut. Life Ins. Co. v. Prewitt, [202 U.S. 246, 26 S.Ct. 619, 50 L.Ed. 1014] Cases, and render their inapplicability to this case certain. Indeed, the ruling in the Herndon Case and in those subsequent to the Doyle and Prewitt Cases, most of which were reviewed in the Herndon Case, demonstrates that no authority is afforded by those two cases for the conception that it is within the power of a state in any form, directly or indirectly, to destroy or deprive of a right conferred by the Constitution and laws of the United States."

Again in Terral v. Burke Construction Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352, the court, through Chief Justice Taft, had this to say:

"The sole question presented on the record is whether a state law is unconstitutional which revokes a license to a foreign corporation to do business within the state because, while doing only a domestic business in the state, it resorts to the federal court sitting in the state.

"The cases in this court in which the conflict between the power of a state to exclude a foreign corporation from doing business within its borders, and the federal constitutional right of such foreign corporation to resort to the federal courts has been considered, can not be reconciled. They began with Insurance Co. v. Morse, 20 Wall. 445, 22 L.Ed. 365, which was followed by

Doyle v. Continental. Insurance Co., 94 U.S. 535, 24 L.Ed. 148; Barron v. Burnside,. 121 U.S. 186, 7 S.Ct. 931, 30 L.Ed. 915; Southern Pacific Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942; Martin v. Baltimore & Ohio R. R. Co., 151 U.S. 673, 684, 14 S.Ct. 533, 38 L.Ed. 311; Barrow S. S. Co. v. Kane, 170 U.S. 100, 111, 18 S.Ct. 526, 42 L.Ed. 964; Security Mutual Life Insurance Co. v. Prewitt, 202 U.S. 246, 26 S.Ct. 619, 50 L.Ed. 1013, 6 Ann.Cas. 317; Herndon v. Chicago, Rock Island & Pacific Ry. Co., 218 U.S. 135, 30 S.Ct. 633, 54 L.Ed. 970; Harrison v. St. Louis & San Francisco R. R. Co., 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621, L.R.A.1915F, 1187; and Donald v. Philadelphia & Reading Coal & Iron Co., 241 U.S. 329, 36 S.Ct. 563, 60 L.Ed. 1027.

"The principle established by the more recent decisions of this court is that a state *may not, in imposing conditions upon the privilege of a foreign corporation's doing business in the state, exact from it a waiver of the exercise of its constitutional right to resort to the federal courts, or thereafter withdraw the privilege of doing business because of its exercise of such right, whether waived in advance or not.* The principle does not depend for its application on the character of the business the corporation does, whether state or interstate, although that has been suggested as a distinction in some cases. It rests on the ground that the federal Constitution confers upon citizens of one state the right to resort to federal courts in another, that state action, whether legislative or executive, necessarily calculated to curtail the free exercise of the right thus secured is void because the sovereign power of a state in excluding foreign corporations, as in the exercise of all others of its sovereign powers, is subject to the limitations of the supreme fundamental law. It follows that the cases of Doyle v. Continental Insurance Co., 94 U.S. 535, 24 L.Ed. 148, and Security Mutual Life Insurance

Co. v. Prewitt, 202 U.S. 246, 26 S.Ct. 619, 50 L.Ed. 1014, must be considered as overruled and that the views of the minority judges in those cases have become the law of this court. The appellant in proposing to comply with the statute in question and revoke the license was about to violate the constitutional right of the appellee. In enjoining him the District Court was right, and its decree is Affirmed." (Emphasis by the writer).

The Supreme Court of Mississippi, in Protective Life Ins. Co. v. Lamarque, 180 Miss. 243, 177 So. 15, 17, dealt with a similar proposition wherein an individual sought to avail himself of the benefits of a group insurance policy, and from which the following is quoted:

"The proof shows that the Alabama Power Company applied for this group insurance in Birmingham, Ala., and that the policy of insurance was delivered to the Alabama Power Company at its office in Birmingham, and, as hereinbefore stated, that a certificate of the fact of such insurance was delivered to Lamarque by the Mississippi Power Company at its office in this state showing that he was covered by the same in the sum of $2,500 as for ten years' continuous employment under the terms of this group policy. There is no contention that Lamarque paid any premium, and the contract shows that the premiums on the master policy were to be paid by the Alabama Power Company, its associates and affiliates, including the Mississippi Power Company. The following exerpts from the master policy are set forth as being material:

"The 'Protective Life Ins. Co. Birmingham, Alabama * * * By this policy of insurance agrees to pay the amount determined by the formula on page 4 of this policy at the Home Office of the Company in Birmingham, Alabama. * * * This insurance shall be effective from Noon Standard Time at Birmingham, Alabama, August 2, 1925. * * *

584

" 'If any employee insured under this policy shall furnish the Company with due proof that he has, before having attained the age of 60, become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will pay to him in full settlement of all obligations to him hereunder the amount of insurance then effective on his life, either in a single payment, or in annual installments as hereinafter set forth as the employer may elect. * * *

" 'Privileges and Conditions. The insurance hereunder shall during the continuance of the policy cover the employees included in and according to the formula hereinafter contained. * * *

" 'Termination of Insurance. The insurance of each employee covered hereunder shall end when he shall leave the service of the employer, or be dismissed therefrom, but without prejudice to his right to conversion to individual policy form.'

"The policy provides that any employee might, within 31 days, convert the group insurance into individual insurance upon payment of the premium due therefor, at the rate of his then attained age, in any one of the forms of policies issued by the insurer.

"On this statement of facts, it is only necessary for us to consider the contention of the appellant that it was entitled to a peremptory instruction because Lamarque had not furnished proof of his total disability while he was an employee of the City Bus Company and while the insurance as to him was in force.

"With the general observation that this policy was undoubtedly executed and delivered by the insurance company to the Alabama Power Company, and that it is unquestionably true that the contract stipulated that the insurer was to perform its obligation in Alabama, it is also unquestionably true

that Lamarque did not furnish proof as to his total disability to the insurer until after the expiration of more than 60 days from the time he ceased to be an employee of the City Bus Company, and at a time, under the contract, when he was no longer insured.

"There is no evidence aliunde the contract as to the intention of the parties thereto, so we are not confronted with the distinction made between lex loci contractus and lex loci solutionis. The contract in the case at bar is an Alabama contract, and the interpretation placed upon it by either party is to be determined by the laws of that state. Harrison v. Pike, 48 Miss. 46; Greenlee v. Hardin, 157 Miss. 229, 127 So. 777, 71 A.L.R. 741, and the authorities there reviewed. The language in this contract, 'If any employee insured under this policy shall furnish the Company with due proof that he has, before having attained the age of 60, become wholly disabled by bodily injuries,' has been construed by the Alabama court in the cases of McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349, 352, and McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729, 733, the former case holding that unambiguous contracts must be enforced as written, there being no room for construction, and that 'Our conclusion is that furnishing proof of disability, and the approval of the same by the appellee, while the insured was a member, with premiums paid, and the insurance was in force were conditions precedent and not subsequent, as contended by appellant's counsel.' In the McCutchen Case, supra, the court said, as to the McGifford Case, 'Conditions precedent in the law of contracts, not impossible within themselves, are none the less binding, although by subsequent events performance may become impossible without fault of the promisor.'

"The Supreme Court of Mississippi, in the case of Murray v. Metropolitan Life Ins. Co., 145 Miss. 266, 110 So. 660, held that the liability of an insurer of

employees, under a master policy providing for termination on the employee's discontinuance of active employment, becomes fixed at the time of injury to the employee, and may be enforced after termination of employment, there passing directly upon the question presented that the disability benefits were ended by reason of the fact that the claim therefor was not established before the termination of his employment. The Murray Case was not considered by the Alabama court, but it reached its own conclusion as to the insurer's liability in the interpretation of the contract, by which we are bound.

"For a lucid discussion of the precise question here as to when and under what circumstances the interpretation placed upon the obligations of a contract by the court, of the place where it was executed and to be performed, and to what extent it is binding upon the court lex loci solutionis, see Beale's Conflict of Laws, vol. 2, p. 1199, § 346–1.

"The appellee, however, insists that Lamarque was a resident of Mississippi, never having been in Alabama, and further that the City Bus Company operated its busses only in Harrison county, Miss., and that, therefore, our statute, section 5131, Code 1930, in conjunction with section 2294, Code 1930, requires us to solve the interpretation of such a contract as the one in the case at bar according to the laws of Mississippi. A pertinent part of section 5131 is as follows: 'all contracts of insurance on property, lives or interests in this state shall be deemed to be made therein'; and of section 2294, in substance, is that the limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and that any such change renders that limitation in the contract void.

"Many of our decisions were cited in the case of Hartford Accident & Indemnity Co. v. Delta & Pine Land Company, 169 Miss. 196, 150 So. 205, wherein we enforced these statutes even against a foreign contract upon the ground that the insured was a citizen of the state, and held, in effect, that the provision for notice of loss, as therein set forth, was a limitation of action, and that, notwithstanding the Tennessee court had construed such a contract to be a limitation of liability, we declined to follow the Tennessee court. This case was appealed to the Supreme Court of the United States where it was reversed (292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928), and our construction of one of said statutes was held to be a violation of the due process clause of the Fourteenth Amendment to the Constitution. of the United States. The situation confronting us in the case at bar cannot be differentiated from the Hartford Accident & Indemnity Co. Case. We feel constrained to follow the decision of the Supreme Court of the United States, supra, notwithstanding our long line of decisions."

 Of course, neither this court nor the state court, had this suit been brought there, would reach the matter of interpreting the contract, in its general application, until jurisdiction had been established. The present motion raises the issue that there is no jurisdiction or power to deal constitutionally with the cause of action alleged to exist under the policy, for the reason that it is clearly premature and does not come into being until the plaintiff has complied with its valid provisions under the law of the state where it was made and delivered, to wit: Texas. All of plaintiff's claims must necessarily arise under the policy contract, and he cannot take advantage of part of them and repudiate those which he does not like under this state law. Had the contract of insurance been made in Louisiana, then it would be governed by the laws of that state, which could require the inclusion of such terms as were not in conflict with the federal constitution; but in this instance, it was not made or delivered here and Louisiana cannot, by statute, write into it provisions repugnant to that constitution. To say that the state can confer

jurisdiction upon this court by compelling a non-resident to surrender a right enjoyed under the federal constitution would be to clothe it with power not enjoyed by even the Congress of the United States.

The motion to dismiss should be sustained.